I'm going to try to reserve three minutes for rebuttal and I'll try to keep track of my time. At the same time, I'm hoping to touch on each of the guidelines issues, so I'll see if I can try to do that. As I'm sure your honors know, the assault issue is pending in another case argued in front of another panel just last month that Judge McKeown was on. As I understand the court's rules, that panel will get to decide that issue first. The only difference between the newer guideline in that case and the older version of the guideline in this case are, first of all, here the aggravated assault is in the commentary instead of the text, and second, the older version has the residual clause. Neither of those differences should lead to a different result, however. First of all, the fact that the aggravated assault is in the commentary doesn't mean anything because commentary is just as binding as a guideline if it doesn't conflict with the guideline. Second, the residual clause shouldn't lead to a different result for multiple reasons. First of all, I think you need to interpret the residual clause in light of the commentary, and the commentary says aggravated assault, so I think it would be not real consistent with the commentary to interpret the residual clauses including some other assault. Second, you have to look at the breadth of the Washington assault with intent to commit a felony. It's about as sweeping as you can imagine. It includes any offensive touching, and it includes any felony. I give you multiple examples in the reply brief. The Lee case that I cite in the reply brief says that the offensive touching assault isn't enough, so why would that change when you add intent to commit any nonviolent felony? It just doesn't make sense. So I don't think there can be any different result in this case than there's going to be in the other case. The other thing to consider here is I would submit to Your Honors, Robinson really is controlling. The government didn't argue the Beckles issue to the Robinson panel, but Beckles was out there. Beckles was decided two months before Robinson was even argued. Is there specific treatment in Robinson? No. I looked and looked, but no. No, Your Honor. And Your Honor was on that panel too. I don't know how I land on these panels, but randomness has its upsides and downsides. I've always wondered about that, Your Honor. But either way, Beckles was the law. And Beckles means the government and the panel had to consider the residual clauses. And cert had been granted in Beckles months before that. So I don't think you can really say Robinson isn't controlling on the issue, but it's true that it didn't expressly address it. There is also the felony harassment conviction. And Your Honors, I'm sure know that that has its own independent significance because each crime of violence bumps up the offense level sort of proportionally. The first thing you need to decide, there's another, Judge Christian was on the Benford panel. That's an unpublished decision. The first thing you have to decide is whether you're going to adopt the reasoning of Benford in this case. Benford said, quote, the panel that rendered the Worley decision was aware of Valdivia Flores and nonetheless concluded the contrary. If Your Honors are going to go with that, then I lose on the felony harassment. But I don't think Your Honors should go with that. There are two thoughts I'd like to offer. First of all, if you're going to adopt that reasoning on the felony harassment, then the same reasoning means Robinson is absolutely controlling under the same rationale on the assault issue, though I don't think you need to do that. Second, it's a little bit different here. Applying the reasoning to the defense Valdivia Flores argument is a little bit different than applying to the Robinson. The residual clause argument in Robinson was just another reason to affirm the district court. And district courts get affirmed all the time on alternative grounds. The Valdivia Flores argument is a additional argument that would have been offered to reverse the district court. And that doesn't get so readily done with alternative arguments that aren't presented. So I think you could decide that Worley isn't controlling on the Valdivia Flores argument even though you could decide Robinson is controlling on the assault argument. Let me just stop you and make sure I'm on the same train of thought. So you would have us stick with the U.S. v. Worley? No. Or you think Valdivia Flores actually illuminates this case? I think Valdivia Flores creates a different reason for felony harassment not being a crime of violence that wasn't considered in Worley. And as a result, it's not necessarily inconsistent. It's simply another ground. Correct. And actually, it's interesting. In Valdivia Flores itself, there was another opinion that was to the contrary on the bottom line result. And Valdivia Flores expressly held that, well, that's not controlling here because they didn't consider the aiding and abetting argument. So Valdivia Flores itself is an example of where a court said, well, we're going to look at the aiding and abetting issue separately. Now, that, of course, gets to the substance of the aiding and abetting issue. I think there the case to look at is the INI case. Your initial reaction is to say, well, gee, threat of force is an element because the principal who was aided and abetted had to make a threat of force. But the same thing is true in the accessory after the fact context that was considered in INI. In INI, you had to find the principal made a threat of force or whatever. In that case, it was a murder for hire. So actually, it did force. But the court basically, I think the rationale of INI is that, well, the accessory after the fact, it's not an element as to the accessory after the fact. In the same way, it's not an element as to the aider and abetter. And so I don't think you can say that it's an element for an aider and abetter in the felony harassment context. It's an element of what the principal had to have done. So I think INI is actually controlling on that point. I'm getting close to my three minutes that I wanted to save for rebuttal. Just real quick on the in connection with another felony enhancement. The important point there, I think, is there's absolutely nothing. There's some stuff out there about maybe Mr. Doar was selling drugs. There's absolutely nothing to suggest that he was using a gun in connection with selling drugs, which is what would have to be found for that enhancement. There were guns in the house, but they were in a totally separate room. The government says, well, the reason they were in a totally separate room was he was trying to get rid of them. That's rebutted by the recorded call where he's talking about having them hidden under the stove burners. That is a suggestion they weren't there to protect the drug pipes and small amounts of paraphernalia that were in the house. I'll save the rest of my time for my rebuttal unless the court has questions. Thank you. Good morning, Your Honors. May it please the court, Helen Bruner on behalf of the United States. I guess some of us get the privilege of making these arguments multiple times. We could have T-shirts printed. I think so. We could be a club. Could we go to this confusion, which seems to me to be confusion about Valdivia Flores and what it did not do, whether it's controlling. What is the government's position on that vis-a-vis Wuerl? Well, Your Honor, I think it's very clear in Wuerl that it was not briefed. The accomplice liability issue was not briefed in Wuerl. It was raised in a 28-J letter before argument, but it is not dealt with. So I think I would say that at least with respect to the question of whether felony harassment meets the standard, I think it controls. I mean, certainly the court had the opportunity to consider it and did not in argument. But in any event, even if Valdivia Flores does come into the argument, I would suggest that what counsel is really asking this court to do is to conclude that because Valdivia Flores and Franklin following that concludes that the Washington statute is, the accomplice liability statute is overbroad and accomplice liability is part of, doesn't need to be charged in order for that theory to be available in every case, that every statute under Washington law would therefore be overbroad without regard to whether accomplice liability plus the underlying statute still meets the definition in the guidelines. And I would suggest that even with accomplice liability, felony harassment meets the standard. Does that answer the court's question? That answered my question. I wanted the government's position. I think I got it. I would say as well with respect to Robinson, Robinson did not address the residual clause. And I do think the residual clause comes into play here because of the unique circumstances of this being a remand and therefore the earlier guidelines applied. Now, the government didn't argue in Robinson the residual clause, but at the time that that case was briefed, again, that was post Johnson. And while the court was, in fact, deciding the question of whether or not, you know, the Beckles decision, but more importantly, the government's policy at that time was that Johnson applied to the residual clause in the guidelines. And more importantly, in this court, there is a pre-Booker decision that held that the void for vagueness theory applied to the guidelines. So the government really didn't have a reason at that point to make the argument. So I don't think Robinson controls the outcome here. I do think. But is your position that that would save you now under the residual clause? Yes. Could you let us hear that part of your argument, please? Certainly. I think under the residual clause, what we have is having to show that the statute presents a serious potential risk of physical injury to another. And it's difficult for me to conceive of any situation, even when you're talking about an assault with an intent to commit a felony. After all, what we have is an assault. But the way Washington defines assault includes offensive touching that doesn't result in harm. That is true. But even offensive touching, I think, brings with it the risk. Because much like at the end, you'll pardon me if I go back to the idea of burglary, even though we're long since past all of that, burglary alone didn't necessarily in every case raise the question of physical injury, yet it presented a substantial risk. I think the fact that there's offensive touching is enough that there may be a fighting back. That may result in something that results in injury. That's the government's position. And we think that the residual clause should apply. And we think that the cases pre-Johnson support that. So I guess if we were to go down your line of thinking, the question is, if we take something like the touching, how do we evaluate the serious potential risk? What's the kind of standard we use? Is there just a common-sense standard? I think it is a common-sense standard. I think that's certainly what the standard was pre-Johnson, looking at both the serious potential risk and the types of cases, the types of offenses, the risk posed by the types of offenses that were enumerated both in the guideline and in Johnson and ACCA. So I think that's what we have here, and I think that has been met. So I think from that standpoint, in Mr. Doar's case, this somewhat unique case, I think that the guidelines calculation in this case was correct. I should have asked. Forgive me for interrupting, but you are applying the 2013 guidelines. I am. Okay, just to be clear. Because I think that that's required by the statute. Could we get the government's position on the gun, the use of the gun in furtherance of? Certainly, Your Honor. What's the closest case law that's on point to you, given the understanding that whatever paraphernalia was in the house was in one room and the gun was in another kitchen and living room? Your Honor, it's certainly clear that the government has the burden of establishing it by preponderancy of the evidence, and there has to be a connection between the two. But I would point out that the defendant's own statement, and I think that's AR 18 during the hearing, talks about this house being a 500-square-foot house. And what we have is sort of a combination of things the district court had before it in exhibits I and J to the government sentencing memoranda, to memoranda from witnesses who described the fact that he was selling drugs, that he had a firearm or had firearms. In fact, the one witness talks about the fact that he walked out of the bedroom that day, the day of his arrest, with the firearms. It's all a tiny bit confusing as to where those guns were. We know for certain that he moved them because he put them into the bag along with the body armor in order to get them out of the house before the probation officer arrived. But I think taken together with his own statements about selling drugs, his statements about the kind of conduct that he engaged in certainly in the past with the guns, the body armor, the police jackets that he was stealing from drug dealers, I think you can infer that by a preponderance of the evidence. I think there's enough there. Mr. Gunn says if you're going to use the guns to further the drug situation or protect yourself or whatever, you don't usually hide them in the stove. Well, that may be, Your Honor. But perhaps when you're on Department of Corrections supervision and you have some place to keep them and your house is 500 square feet, it's not that far of a move from the firearm in the stove to the drugs in the living room. I guess they weren't doing a lot of baking, perhaps. I have a feeling that would be an accurate assessment. Ms. Brunner, I did notice the 500 square feet, and I don't mean to belabor the point, but I even wondered if it was really two different rooms or a kind of a studio arrangement where the kitchen was by one end. Do we have anything in the record about that? There's nothing in the record that establishes that, Your Honor. Okay. I wish there was. It would be easier. So in any event, I— Did you want to ask—a counsel asked that this case be reassigned. Did you want to speak to that? Certainly, Your Honor. I think that the—first of all, part of the argument here is that Judge Layton expressed his dismay at the state of the law with respect to what constitutes a crime of violence. I don't think that that suggests in any way that Judge Layton would not follow this Court's— if this Court were to remand this Court's opinion in any way. It certainly did following the last remand. I suspect he may have—I mean, he certainly used some colorful language with respect to that, but he is certainly not alone, I think, in his frustration with this analysis and where we go from there. I do think he has considered this case very carefully. He considered the facts of this case. This is a defendant whose criminal history only accounts for four of his 12 adult felony convictions. He has been either in custody or on supervision since 1987, and virtually, if one looks through the pre-sentence report, in virtually every case, we're within no more than three or four months of release. He's yet again violated the law by committing a new crime, and, in fact, while on pre-trial release, commits new crimes. Your overtime, if I could just get one last question in, please. Certainly. He has a lot of prior felonies, including a lot of residential burglaries, five or six, I think. Yes, six. They don't score here at all because I think they're so old. That's correct. Which is somewhat ironic because he spent a lot of time in jail because they're serious felonies. But here we are, and I think perhaps hence the trial court's frustration. I just want to be clear that the government's position is it's just these two prior felonies that qualify as consideration. Is that right? Yeah, as a result of the passage of time. Yes, Your Honor. And just one other question. At sentencing, he stipulated that he had one prior, but we don't know which one he stipulated to, right? That's correct. Okay. Thank you. Thank you. You have some rebuttal time. One real quick point on the last one. The stipulation, Your Honor, of course, was just for trial purposes and partly to keep the jury from hearing about the nature of the felonies. But it's a stipulation. And so when we get to the body armor conviction, he just needs one prior, right? That's correct. So I don't win on that unless I win on both felony harassment and assault. That's correct, and I try to be clear. A couple points. First of all, the government's argument about offensive touching and how that might lead to resistance, the court considered that exact question in the Lee case that I cite in the reply brief at page 10. That argument's been disposed of. Your Honor asked the government about its best case on the connection of the guns to felony, Judge Christin. I think the best case is the Clinton case from the Seventh Circuit that I cite in the reply brief, which held that there was not. Maybe I should have asked the best controlling authority. Right. So I didn't ask a good question, but I appreciated the Clinton case. Right. Your Honor, the Clinton case actually also had a statement by the defendant admitting it was selling drugs. The key was there wasn't a statement that he admitted selling drugs and using a gun when he sold them. So what do you make of the question or the material that's in the government's sentencing memorandum about the recorded phone calls about the history of robbing Mexican drug dealers? The history of robbing Mexican drug dealers, Your Honor, that phone call happened while he was serving a prison sentence that started in 2001. I understand that, but that was their argument, one of their arguments about how that satisfied in connection with. And I don't think it does because these guns have to be in connection with, and that was about activity back before 2001. So I don't, there was this police jacket that they found. If you read the record, I think it's the reporter's transcript pages 322 to 23, something like that. That was a jacket that came from Value Village for $6.99. It wasn't some real police jacket. And there was nothing else out there to suggest he was engaging in this activity at the time after he got out of his prison sentence. Your Honor also asked about what the record showed about whether this might be a studio apartment. It's not crystal clear, but I believe there's references to a living room. It's what it says. That's why I asked, and I think Ms. Brunner's right. I don't think we have it. I think that's correct. But I think the implication is they were separate rooms. But you're right.  We don't know if they were small rooms, yes. Okay. And those are what my, oh, on the different judge, I just want to remind the Court, it's the appearance of justice. What would a reasonable person, a lawyer even, let alone a defendant, think when they've heard those sorts of terms about the controlling case law? The Court has to apply. Thank you. The case just argued, United States v. Doar is submitted. I thank you both for your arguments this morning in this continuing saga of how to unsort the statutes. The next case of U.S. v. Danahauer is submitted on the briefs. We'll next hear argument in Herrick v. Strong.
judges: Thomas, McKeown, Christen